The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                              Plaintiff,

        v.

CESAR CRUZ,

                              Defendant.

No. CR20-158 RSL

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR
REVIEW OF DETENTION ORDER**

## I.       INTRODUCTION

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and C. Andrew Colasurdo and Jessica M. Manca, Assistant United States Attorneys for said District, respectfully responds to the defendant's motion for review of the detention order issued by the Honorable Brian A. Tsuchida, United States Magistrate Judge.  Dkt. 13.

The defendant is charged with one count of *Distribution of Methamphetamine*, and one count of *Possession of Controlled Substances with Intent to Distribute*, each in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).  At a detention hearing held on October 7, 2020, after hearing from both parties and United States Pretrial Services, Judge Tsuchida ordered the defendant detained pending trial.

The defendant does not challenge the extensive factual findings that are the foundation of Judge Tsuchida's detention order.  Rather, he asks the Court to review the

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  evidence and arguments previously submitted to Judge Tsuchida, as well as new

2  information about a potential employment opportunity, and reach a different conclusion.

3  Because the Bail Reform Act's factors still weigh in favor of detention, this Court should

4  deny the defendant's motion.

5  ## II.   BACKGROUND

6  The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Drug

7  Enforcement Administration (DEA) began investigating Cesar Cruz's criminal activity in

8  2018, after receiving information from a confidential source.  The source told agents that

9  Cruz regularly drove to California, approximately every two weeks, to pick up a 100

10  pounds (45 kilograms) of controlled substances for redistribution to violent rival gangs in

11  the greater Seattle area.

12  On September 12, 2018, an undercover agent purchased one pound (approximately

13  450 grams) of methamphetamine from Cruz, for $3,000.00.  According to the

14  confidential source, it was unusual for Cruz to deal in such "small" quantities.  The deal

15  was described to Cruz as a product sample for a potential new customer.  During the deal,

16  Cruz even remarked, "Just one, huh?"

17  Agents obtained a GPS tracking warrant for Cruz's primary vehicle, a Ford

18  Explorer registered in his girlfriend's mother's name.  The tracker was installed between

19  September 23, 2018 and December 3, 2018.  During that two-month period, Cruz made

20  three brief trips to California.  On the first trip, he left the evening of October 12, 2018.

21  After driving over 1,100 miles in approximately 20 hours, making only brief rest stops,

22  Cruz stopped for four hours in South El Monte, California, and then immediately drove

23  north, arriving in Seattle on the afternoon of October 14, 2018.  The confidential source

24  later told investigators that Cruz picked up 20 kilograms of methamphetamine, five

25  kilograms of heroin, and three kilograms of cocaine on that trip.  Cruz took a second brief

26

27

28

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   trip to the Fresno, California area between November 4, 2018 and November 6, 2018.

2   The confidential source said that Cruz delivered firearms to his friends during this trip.[1]

3         On the third California trip, which occurred between November 29, 2018, and

4   December 3, 2018, agents stopped Cruz around 4:00 a.m. on December 3rd as he drove

5   home to Seattle on northbound Interstate 5.  He was accompanied by his girlfriend,

6   Griselda Natareno-Ochoa, and his brothers, Gamaliel Cruz and Jader Colima-Cruz.

7   Agents searched Cruz's Ford Explorer pursuant to a warrant and located a duffel bag in

8   the back cabin area, behind the rear row of seats.  The duffel bag contained 6,280 grams

9   of heroin, organized in brick-sized, saran-wrapped packages.

10         As agents continued to investigate Cruz's drug trafficking activity, they identified

11   26 firearms that Cruz purchased from federally licensed gun stores between June 2015

12   and October 2018.[2]  Certain characteristics of these purchases suggested that Cruz was

13   buying firearms for other people to possess (commonly referred to as "straw

14   purchasing").  One of Cruz's firearms was recovered in Mexico, and two firearms were

15   recovered in California.  The firearms in California were recovered shortly (3 days and

16   36 days) after Cruz purchased them in Washington.  A fourth firearm was involved in a

17   homicide in Seattle.  Additionally, agents noted that Cruz purchased multiple firearms

18   during a single transaction, sometimes of the same model.  For example, Cruz purchased

19   two Colt M4 rifles during a single transaction on December 22, 2017, after previously

20   purchasing a Colt M4 rifle in April 2017, and he purchased two Glock 19 pistols during a

21   single transaction on March 22, 2018, after previously purchasing a Glock 19 pistol in

22   June 2016.

23

24

25   _____

26   [1] Investigators later confirmed that Cruz purchased two semi-automatic rifle-style pistols (a Springfield Armory
Saint .300 Blackout pistol and a B&T GHM9 9mm caliber pistol) on October 26, 2018, approximately nine days
before he left for California.

27

28   [2] Because there is no national firearm registry, ATF investigates firearm purchases by tracing firearms that have
been involved in crimes and requesting firearm purchase records from individual firearms dealers.

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After the interdiction on December 3, 2018, agents terminated their agreement with the confidential source due to his/her new criminal activity and the investigation into Cruz's drug trafficking network stalled.  But Cruz's drug trafficking continued.  On July 24, 2020, agents received information from a new confidential source that Cruz was planning a trip to California, in a rental car, with firearms and over $150,000.00 cash. The following day, law enforcement stopped Cruz while he was driving southbound on Interstate-5, in a car rented by his girlfriend.  She rented the car for three days, which is consistent with the timing of Cruz's other trips to California. After a narcotics K9 alerted on the car, agents obtained a search warrant and located a bag in the trunk that contained $124,861.00 cash.  Agents later obtained surveillance video that showed Cruz placing that bag in the trunk of the rental car before the trip.

On September 23, 2020, a grand jury in the Western District of Washington indicted Cruz for distributing methamphetamine to the undercover agent on September 12, 2018, and for possessing heroin with intent to distribute on December 3, 2018. Agents arrested the defendant on October 1, 2020, and searched his house pursuant to a warrant.  During the search, agents located four firearms in a safe in Cruz's bedroom:  a Glock 19 9mm caliber pistol, a Draco 7.62x39mm rifle-style pistol, a Colt M4 Carbine 5.56mm rifle with a bump stock, and a short-barreled Colt M4 Carbine 5.56mm rifle with an appropriate tax stamp.  Agents asked Cruz about the other 22 firearms that he purchased and no longer possessed.  Cruz claimed that he pawned most of the firearms, and that the rest were stolen when his friends and family came to visit him from California.  Cruz also told agents that they would find approximately six ounces (179 grams) of methamphetamine in a kitchen drawer, which he admitted was his.  Finally, agents located $27,000 in a laundry hamper in another bedroom.  Cruz's brothers, Jader Colima-Cruz, claimed that he had earned this money by working as a personal trainer.  A narcotics K9 alerted on both the cash and the hamper area.

At the defendant's arraignment and detention hearing held October 7, 2020, Judge Tsuchida considered each of the statutory Bail Reform Act factors, including the

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    defendant's ties to the community and personal characteristics and "conclude[d]

2    defendant poses a risk to the community and should be detained." Dkt. 13 at 2.  In

3    reaching this decision, Judge Tsuchida found that "the case against defendant is strong,

4    the charges involved extensive criminal activity over an extended period of time and that

5    at least several family members have either turned a blind eye to defendant's alleged

6    criminal activities or have assisted him in some way." *Id.* at 1.   Judge Tsuchida also

7    noted Cruz's history of firearm purchases, frequent trips to California, and the fact that he

8    possessed a "substantial amount of cash" despite having no legitimate employment. *Id.*

9    at 2.

10           Trial is scheduled for March 15, 2021.

11                            **IV.    ARGUMENT**

12   **A.    Standard of Review**

13           Review of a magistrate judge's detention order is *de novo*. *United States v.*

14   *Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court, however, "is not required to

15   start over in every case[] and proceed as if the magistrate's decision and findings did not

16   exist." *Id*. at 1193. Instead, the court should "review the evidence before the magistrate

17   and make its own independent determination whether the magistrate's findings are

18   correct, with no deference." *Id*. The Federal Rules of Evidence do not apply in pretrial

19   detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly,

20   both the government and the defense may present evidence by proffer or hearsay. *United*

21   *States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

22   **B.    The Defendant Should Be Detained.**

23           A defendant shall be ordered detained pending trial if "the judicial officer finds that

24   no condition or combination of conditions will reasonably assure the appearance of the

25   person as required and the safety of any other person and the community."  18 U.S.C.

26   §3142(e)(1).  There is a presumption of detention in the defendant's case because he is

27   charged with two drug offenses that carry a maximum term of imprisonment of 10 years

28   or more. 18 U.S.C. § 3142(e)(3)(A).  "Although the presumption shifts a burden of

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  production to the defendant, the burden of persuasion remains with the government."
2  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Danger to the community must
3  be demonstrated by clear and convincing evidence, *see United States v. Gebro*, 948 F.2d
4  1118, 1121 (9th Cir. 1991), while risk of flight may be established by a preponderance of
5  the evidence.  *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).
6  If the defendant proffers evidence to rebut the presumption of dangerousness and flight,
7  the Court then considers  the following factors:  (1) the "nature and circumstances of the
8  offense charged," (2) the "weight of the evidence against" the defendant, (3) the "history
9  and characteristics" of the defendant, including his "character, physical and mental
10 condition, family ties, employment, financial resources, length of residence in the
11 community, community ties, past conduct, history relating to drug or alcohol abuse,
12 criminal history, and record concerning appearance at court proceedings," and (4) "the
13 nature and seriousness of the danger to any person or the community that would be posed
14 by the person's release." 18 U.S.C. § 3142(g).

15 First, the nature and circumstances of the offense are serious and weigh in favor of
16 detention.  The defendant's offenses are not discrete incidents; they are snapshots
17 indicative of a broader pattern of high-level drug trafficking.  Cruz typically dealt in
18 kilograms of drugs worth hundreds of thousands of dollars, and he took frequent trips to
19 California to resupply his stash.  As Judge Tsuchida noted, Cruz had access to substantial
20 amounts of cash, despite not having worked for several years.

21 Equally concerning, Cruz has a long history of purchasing numerous firearms
22 under suspicious circumstances.  Of at least 26 firearms he purchased, he had only four
23 firearms in his residence when he was arrested.  When asked, he provided only a vague
24 and implausible explanation for the other 22 firearms that are missing.  The number of
25 firearms that Cruz purchased, and the fact that some of these firearms have been
26 recovered in California and Mexico, corroborates the confidential sources' information
27 that Cruz trafficked firearms to California in addition to bringing drugs into Washington.
28

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Second, the evidence against the defendant is strong. Cruz sold methamphetamine

2  to an undercover ATF agent during a recorded controlled buy.  Several of his short trips

3  to California were monitored by a GPS tracker.  On one of these trips, he returned to the

4  Seattle area with over six kilograms of heroin in the trunk of his car.  On another

5  occasion, he was stopped traveling south to California with $124,861.00 cash.  When

6  ATF agents searched his residence, they found firearms and more distribution amounts of

7  methamphetamine, which Cruz admitted was his.

8    Third, the defendant's history and characteristics are, at most, neutral.  The

9  government acknowledges that the defendant has no prior criminal history and significant

10  family ties to this area.  However, he also has significant family ties to other places, such

11  as California and Mexico, a track record of frequent travel to California, and a complete

12  lack of legitimate employment history.  Furthermore, he has an incentive to flee now that

13  he is aware of this investigation and has been indicted for two offenses that each carry a

14  10-year mandatory minimum sentence upon conviction.

15    Perhaps more importantly, the defendant's local support network has not shown a

16  willingness to disrupt his drug trafficking activity.  At best, they have turned a blind eye

17  to his activities; at worst, they have encouraged and supported it.  In 2018, Cruz used the

18  same vehicle to sell methamphetamine to the undercover agent and take short drug

19  trafficking trips to California:  a black Ford Explorer registered in his girlfriend's

20  mother's name.  Two of the people who submitted letters on his behalf, his girlfriend

21  (Def.'s Ex. A at 2) and his brother (Def.'s Ex. A at 6), were riding in that Ford Explorer

22  with Cruz when he drove a load of heroin back from California on December 3, 2018.

23  Additionally, in June 2020, Cruz's girlfriend rented the car that Cruz was driving with

24  over $124,000.00 cash in the trunk.  Furthermore, because Cruz lives with his girlfriend

25  and several of his siblings, they were almost certainly aware that he had significant

26  income without legitimate employment, that he owned several firearms, and that he kept

27  several ounces of methamphetamine in their kitchen cabinet.

28

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Fourth, drug trafficking at the defendant's level, combined with an extensive

2   pattern of suspicious firearm purchases, poses a clear danger to the community.  In the

3   pandemic environment, Pretrial Services is not well positioned to closely monitor a

4   defendant's private activities or disrupt drug and firearms trafficking.  Further, Cruz

5   continued dealing drugs after he was stopped by police in December 2018, and after he

6   was stopped by police in June 2020.  There is no reason for the Court to believe he will

7   abandon those lucrative activities now.

8   **V.     CONCLUSION**

9   The defendant is as much a risk of danger and flight as he was when Judge

10  Tsuchida issued his detention order.  The government has met its burden to demonstrate

11  that the defendant should be detained pending trial, and his motion for review of Judge

12  Tsuchida's detention order should be denied or, alternatively, dismissed.

13

14  Dated this 9th day of December, 2020.

15          Respectfully submitted,

16

          BRIAN T. MORAN
17          United States Attorney

18           */s/ Jessica M. Manca*
19          JESSICA M. MANCA

20          C. ANDREW COLASURDO
          Assistant United States Attorneys
21          700 Stewart Street, Suite 5220

22          Seattle, Washington 98101
          Telephone:  (206) 553-7970
23          Email:  Jessica.Manca@usdoj.gov

24

25

26

27

28

Response to Motion for Review of Detention Order
*United States v. Cruz*, CR20-158 RSL - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970